UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES ULLMAN, et. al,

      Plaintiffs,                        Case No. 2:05-cv-1000
                                              JUDGE GREGORY L. FROST
      v.                                Magistrate Judge Mark R. Abel

AUTO-OWNERS MUTUAL
INSURANCE CO.,

      Defendant.

## OPINION AND ORDER

This diversity matter is before the Court for consideration of Defendant's motion for summary judgment on all claims or, in the alternative, for partial summary judgment on the bad faith claim (Doc. # 74), Plaintiffs' memorandum in opposition (Doc. # 87), and Defendant's reply memorandum (Doc. # 90). For the reasons that follow, this Court finds the motion not well taken.

### I.  Background

Plaintiffs James Ullman, Frank Byers, Richard Ronding, and Hassan Dakhtah conduct business together under the name the Burd Partnership.[1] They own real estate in Logan County, Ohio, including an antique mall located in Bellefontaine, Ohio. On January 3, 2005, part of the roof and a wall of this antique mall collapsed.

---

[1] Defendant's summary judgment motion indicates that although he is a named plaintiff, Ronding ceased being a member of the partnership years before the collapse. (Doc. # 74-1, at 2 n.1.) By tracking the pleadings in this summary of the case, the Court expresses no opinion here on whether Ronding is a proper party to this litigation.

Plaintiffs contacted their insurer, Defendant Auto-Owners Mutual Insurance Co. ("Auto-Owners"), and informed it of the collapse. On January 4, 2005, claims representative Trudy Bushman inspected the antique mall on behalf of Defendant. Later that day, Bushman spoke with Alan Kundtz, an engineer from SEA, Ltd., who then conducted an on-site inspection the following day. Kundtz reported to Bushman that an inward acting force had caused the wall to fall, and Defendant issued a letter that same day that denied coverage under the commercial insurance policy. Plaintiffs' June 2005 submission of a formal claim met with the same rejection in September 2005.

Plaintiffs subsequently filed suit in the Common Pleas Court in Logan, Ohio on October 6, 2005. (Doc. # 1-3.) They assert that there was no evidence to support the denial, that the collapse of the wall should be covered under the insurance policy, and that the denial of their claim was in bad faith. Accordingly, the complaint presents one claim for breach of contract and one claim for bad faith. The Michigan-based Defendant removed the action to this Court on November 1, 2005. (Doc. # 1.)

On January 30, 2007, Defendant filed a motion for summary judgment or, in the alternative, for partial summary judgment on the bad faith claim. (Doc. # 74.) During briefing on that motion–and one week before a scheduled deposition of Plaintiffs' bad faith expert–Plaintiffs filed a supplemental report from their expert, Howard J. Hartman. (Doc. # 76.) Defendant responded by filing a February 16, 2007 motion to strike the supplemental report and to limit Hartman's testimony. Because the motion to strike could affect the summary judgment analysis, the Court set up an expedited briefing schedule for the motion to strike. (Doc. # 83.) After the parties completed briefing on the motion to strike, the Court issued an April 5, 2007

Opinion and Order that granted the motion to strike Hartman's February 12, 2007 supplemental report and precluded him from testifying at deposition and trial in accordance with that report. (Doc. # 93.) The summary judgment motion is now ripe for disposition.

## II. Discussion

### A. Standard Involved

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant Defendant's motion for summary judgment here if Plaintiffs, the nonmoving parties who have the burden of proof at trial, fail to make a showing sufficient to establish the existence of an element that is essential to their case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of Plaintiffs, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52.)

**B. Analysis**

Defendant moves for summary judgment on the entire complaint on the grounds that its policy excludes from coverage damages caused by earth movement and hydrostatic forces and that there is no evidence of a contrary cause here. Alternatively, if the Court recognizes that a genuine dispute of material fact exists over the cause of the collapse, Defendant seeks partial summary judgment on Plaintiffs' bad faith claim. This Court shall address both arguments in turn.

There is no dispute that the parties' experts disagree over the cause of the collapse. Defendant argues, however, that there is no cognizable genuine dispute over this material fact because the opinions of Plaintiffs' experts are not admissible under the test set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

In *Daubert*, the United States Supreme Court held that the Federal Rules of Evidence had superseded the "general acceptance" test of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and that Rule 702 requires that trial judges perform a "gate-keeping role" when considering the admissibility of expert testimony. *Daubert,* 509 U.S. at 597. The relevant Federal Rule of Evidence is Rule 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles

>and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Further, the Supreme Court has made clear that Rule 702 applies not only to scientific testimony but also to other types of expert testimony based on technical or other specialized knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 149 (1999).

The trial court's gate-keeping role is two-fold. First, the Court must determine whether the proffered testimony is reliable. *See Daubert*, 509 U.S. at 590. The reliability assessment focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* The expert's testimony must be grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief. *Id.* Thus, the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3rd Cir. 1994).

The Supreme Court in *Daubert* set out four non-exclusive factors to aid in the determination of whether an expert's methodology is reliable. They are:

>(1) whether the theory or technique has been tested;
>(2) whether the theory or technique has been subjected to peer review and publication;
>(3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and
>(4) whether the theory or method has been generally accepted by the scientific community.

*Daubert*, 509 U.S. at 593-94. *See also Deal v. Hamilton County Bd. of Ed.*, 392 F.3d 840, 851 (6th Cir. 2004). The Court in *Kumho Tire* stressed that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial judge may consider one or more of the *Daubert* factors when doing so will help determine that expert's reliability. *Kumho Tire*, 526 U.S. at 150. The test of reliability is a "flexible" one, however, and the four *Daubert* factors do not constitute a "definitive checklist or test" but must be tailored to the facts of the particular case. *Id.* (quoting *Daubert,* 509 U.S. at 593); *see also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 470 (6th Cir. 2004). The particular factors will depend upon the unique circumstances of the expert testimony involved. *See Kumho Tire Co.*, 526 U.S. at 151-52.

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant to the facts at issue. *See Daubert*, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. *See United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993). Thus, an expert's testimony is admissible under Rule 702 if it is predicated upon a reliable foundation and is relevant.

The United States Supreme Court and courts of appeals have made clear that a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that area of expertise or that are not founded on a reliable methodology. *See, e.g., Kumho Tire Co., Ltd.*, 526 U.S. at 154-55 (finding the proffered expert qualified as an expert in mechanical engineering, but that his methodology in analyzing a particular tire failure was not reliable); *Weisgram v. Marley Co.*, 169 F.3d 514, 518 (8th Cir. 1999) (holding that a city fire

captain, although qualified as an expert on fire investigation and therefore qualified to testify as to his opinion that a fire started in the entryway and radiated to a sofa, was not qualified to testify as to his unsubstantiated theories of a malfunction that might have caused the fire); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1317-19 (11th Cir. 1999) (proposed expert testimony of pathologist not permitted upon basis of unreliable methodologies in silicon breast implant case); *Cummins v. Lyle Indus.*, 93 F.3d 362, 371 (7th Cir. 1996) (industrial engineer not permitted to render an expert opinion regarding the adequacy of warnings, the adequacy of an instruction manual, and the feasibility of alternative designs for a trim press).

The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury; rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The judge's role is simply to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value. *Wellman v. Norfolk and W. Ry. Co.*, 98 F. Supp. 2d 919, 923-24 (S.D. Ohio 2000).

Defendant seeks to apply these standards to exclude the testimony of engineers Behzad Vedaie and William Shepherd, Plaintiffs' experts. Both men opined that a potential cause of the collapse was an additional load on the structure caused by snow and ice accumulation. Because neither man identified the quantity of snow or ice on the roof on the date of collapse, Defendant initially argues, neither engineer's opinion is based on scientific evidence. Second, Defendant asserts that both Vedaie and Shepherd stated that they did not subject their reports to peer review. Thus, Defendant concludes, because "neither expert's opinion was peer reviewed, each

opinion is suspect and should be stricken." (Doc. # 74-1, at 12.)  Finally, citing purported admissions in each engineer's deposition, Defendant contends that the expert opinions are not scientifically reliable.

There is a significant problem with these arguments: Defendant relies in part on the deposition of Shepherd to provide the basis for half of its argument.  Reliance on the Shepherd deposition transcript is problematic, however, because it cannot provide the foundation for judgment that Defendant seeks.

At the outset, the Court notes that Defendant never filed the Shepherd deposition transcript on or before the filing deadline.  The Local Civil Rules state that "[d]eposition transcripts shall be filed electronically if a party reasonably anticipates that they will be needed as evidence relating to a forthcoming motion . . . ." S.D. Ohio Civ. R. 5.4(a).  The Local Civil Rules also provide that "[w]hen proof of facts not already of record is necessary to support or oppose a motion, all evidence then available shall be discussed in, and submitted no later than, the primary memorandum of the party relying upon such evidence." S.D. Ohio Civ. R. 7.2(d). The rules provide for concurrent filing of a motion/memorandum in support and its evidence. S.D. Ohio Civ. R. 7.2(d) & (e).  When "evidence is not available to meet this schedule . . . counsel shall consult one another and attempt to stipulate to an agreed Motion for extension of the schedule established by this Rule; failing agreement, counsel shall promptly bring the matter to the attention of the Court in order to avoid piecemeal submission of evidence and unnecessary memoranda." S.D. Ohio Civ. R. 7.2(d).  Here, despite the clarity of the foregoing requirements, Defendant filed its summary judgment motion on January 30, 2007, but never filed the Shepherd

deposition. Plaintiffs filed the deposition on February 20, 2007, the same day on which they filed their memorandum in opposition.

Potentially, there is no issue here with a harmful violation of the local rules, however. It is not apparent how the piecemeal filing has actually prejudiced Plaintiffs, who filed and referenced the Shepherd transcript in connection with their reply memorandum. (Doc. # 90.) But even if the belatedly filed transcript were properly before this Court, the transcript also fails to constitute summary judgment evidence under Fed. R. Civ. P. 56(e).

This failure arises because the transcript is not accompanied by a valid court reporter certification. Although the filing contains a court reporter certification page, the certification bears no signature. (Doc. # 85-3, at 22.) Despite this error, no party can now attack the deposition transcript as a result of Fed. R. Civ. P. 32(d)(4). But that rule targets only the parties and not the Court. In other words, the fact that a party has forfeited the right to attack the deposition transcript neither compels this Court to consider the transcript in contravention of Fed. R. Civ. P. 56(e) nor constrains this Court from properly excluding the transcript *sua sponte* as invalid summary judgment evidence.

The transcript mandates exclusion here. Absent a signature, the filed Shepherd transcript simply does not qualify as proper summary judgment evidence under Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 30(f)(1); *cf. Soliday v. Miami County, Ohio,* No. C-3-91-153, 1993 WL 1377511, at *5 n.4 (S.D. Ohio Nov. 22, 1993) (stating that "the Court cannot consider" deposition testimony referenced in summary judgment reply memorandum but not filed with court); *Moore v. Florida Bank of Commerce*, 654 F. Supp. 38, 41 n.2 (S.D. Ohio 1986) (unauthenticated

9

deposition not filed with court is not proper material under Rule 56); *Podlesnick v. Airborne Express, Inc.*, 550 F. Supp. 906, 910 (S.D. Ohio 1982) (depositions not filed with court but referred to in summary judgment memoranda were not considered in court's decision). *See also Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994) (undated declaration must be excluding from consideration as summary judgment evidence an undated declaration); *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) (discussing why deposition extracts that lack court reporter certification are inadmissible).

Additionally, despite stating in the notice of filing that they are filing the Shepherd deposition transcript "[p]ursuant to S.D. Ohio Civ. R. 5.4(b)," Plaintiffs have also violated that Local Civil Rule. (Doc. # 85, at 1.) The rule requires that "[a]ll deposition transcripts filed with the Clerk must include . . . the certificate described in Rule 30(f), Fed. R. Civ. P." S.D. Ohio Civ. R. 5.4(b).

The Court cannot ignore the plain requirements of the Federal Rules of Civil Procedure and the Local Civil Rules and cannot accept the parties' mutual disdain for complying with the rules as negating such specific requirements. Therefore, the Court cannot consider the Shepherd deposition (Doc. # 85) in addressing Defendant's motion for summary judgment.

In the absence of the excluded transcript, Defendant's *Daubert* attack on Shepherd is wholly conclusory. Moreover, the Court must accept Shepherd's expert report, which Plaintiffs have put before this Court as proper summary judgment evidence. Because nothing in the report itself indicates that Defendant's allegations regarding admissibility are correct, there is no basis for rejecting the report and the opinion contained therein. Applying the *Daubert* standards to the

Shepherd report, the Court must conclude that there is no supported basis for excluding the report.

The Shepherd report on its face constitutes evidence that, if credited, could support Plaintiffs' theory of the case. Thus, even disregarding the Vedaie report, what consideration of all the parties' remaining expert opinions means is that, as the parties agree, there is a genuine dispute of material fact as to the cause of the collapse (and what portion(s) of the insurance policy are then involved).

Because Shepherd's opinion independently presents a genuine issue of material fact, it does not matter *for summary judgment purposes* whether the Court also considers the opinion of Vedaie. Therefore, because Defendant has presented its admissibility-*Daubert* challenge to Vedaie's opinion only in the specific context of grounds for summary judgment and not in the context of a motion seeking to preclude use of that opinion at trial, the Court need not and does not reach the now moot arguments presented in regard to Vedaie. The admissibility of Vedaie's report and opinions outside the summary judgment context is not before the Court here.

In light of the foregoing, the Court **DENIES** Defendant's motion for summary judgment based on the purported inadmissibility of the expert reports and a consequent loss of evidence proving a causation that would fall under the policy provisions involved. This leaves Defendant's alternative request for partial summary judgment on the bad faith claim.

Ohio law provides that in order "to prevail on a bad faith claim, an insured must show that there was no reasonable justification for the manner of handling or for the denying of the insured's claim." *B-T Dissolution, Inc. v. Provident Life and Acc. Ins. Co.*, 123 F. App'x 159,

164, 2004 WL 2912805, at *5 (6th Cir. 2004) (citing *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397, paragraph one of the syllabus (1994)).  Intent is not an element of this reasonable justification standard.  *Zoppo*, 71 Ohio St.3d at 555, 644 N.E.2d at 400. Therefore, "[s]ummary judgment in favor of the insurer is appropriate where, viewing the evidence in the light most favorable to the insured, the claim was fairly debatable and the refusal was premised on the status of the law at the time or the facts that gave rise to the claim."  *Id.* (citing *Tokles & Son, Inc. v. Midwestern Indem. Co.,* 65 Ohio St.3d 621, 605 N.E.2d 936, 943 (1992)).

    Defendant argues that Plaintiff cannot prove bad faith here because it based its denial on the opinions of a qualified engineer and because the insurer offered to continue the investigation by reviewing any evidence Plaintiffs provided.  Plaintiffs in turn assert that summary judgment is not possible because they have two experts, Brian Bradigan and Howard Hartman, who have opined that Defendant acted in bad faith in denying the claim.

    The Hartman Affidavit that Plaintiffs submitted in support of their memorandum in opposition is of little value.  (Doc. # 87-15.)  That affidavit incorporates Hartman's two prior expert reports.  The first report, dated October 28, 2006, is a conclusory document that includes absolutely no reasoning.  The second report, dated February 12, 2007, is of no effect here because the Court previously struck that document in an April 5, 2007 Opinion and Order.  (Doc. # 93.)

    This leaves the Bradigan Affidavit, which incorporates that expert's included report. (Doc. # 87-14.)  As Plaintiffs assert, Bradigan does conclude that "Defendant Auto-Owners

Insurance Company has and continues to act in bad faith in the handling of Plaintiffs' claims for the collapse of their building, because Defendant has and continues to deny this claim without reasonable justification for doing so." (Doc. # 87-14, Bradigan Aff. ¶ 4.) The report attached to the affidavit repeats this conclusion, but a conclusory opinion of bad faith is in itself insufficient to create a genuine issue of material fact. *See Drouard v. United Servs. Auto. Ass'n*, No. L-06-1275, 2007 WL 707532, at *3 (Ohio App. 6th Dist. Mar. 9, 2007) ("Broadly stated opinion evidence by appellants' expert . . . is itself insufficient to establish a genuine issue of material fact regarding appellants' claim for bad faith.").

More importantly then, Bradigan's report also indicates inferred reasons for his conclusions, including the facts that the expert employed by Defendant did not perform any tests or measurements to verify his opinion in regard to hydrostatic pressure and that the insurer denied coverage based on a telephone conversation with its expert conducted well before submission of his actual investigation report and after a two-day investigation. The Bradigan report also summarizes Defendant's actions throughout the claim process and notes that the company apparently tweaked or shifted its reason for denying coverage after its initial denial. Bradigan's assertions speak to the issue of whether there was a reasonable basis for denying the claim.

Ohio law does not provide that simply employing and relying on an expert shields an insurer from a bad faith claim. *See Mundy v. Roy*, No. 2005-CA-28, 2006 WL 522380, at *4 (Ohio App. 2d Dist. Mar. 3, 2006) (explaining that other evidence can puncture an insurer's reliance on an expert in a bad faith claim). Reliance on the expert must be reasonable and must provide reasonable justification for a denial of coverage. Thus, courts applying Ohio law have

13


denied summary judgment when there is a genuine issue of fact over whether an insurer was reasonably justified in denying coverage. *See, e.g.*, *Keyser v. UNUM Life Ins. Co. of Am.*, No. C2-03-138, 2005 WL 2230203, at *9 (S.D. Ohio Sept. 17, 2005) ("Given that issues relating reasonableness are inherently fact-sensitive, and in this case would call for the Court to draw inferences in favor of UNUM in violation of Rule 56, summary judgment on Plaintiff's bad faith claim is DENIED."); *CSS Publishing Co. v. Am. Econ. Ins. Co.*, 138 Ohio App.3d 76, 86, 740 N.E.2d 341, 348 (Ohio App. 3d Dist. 2000) (finding a genuine issue of material fact existed because "competing reasonable inferences could be drawn from the evidence presented by the parties").

It is a close call, but necessarily viewing the evidence and all reasonable inferences in a light most favorable to the insured, the Court must recognize that Plaintiffs have produced evidence that creates a genuine issue of material fact as to whether Defendant reasonably relied on the opinion of its expert in good faith in conducting a full and fair investigation. There must be an appropriate and careful investigation to conclude that Defendant reached its conclusion as a result of the weighing of probabilities in a fair and honest way. The claim was not fairly debatable if Defendant hastily relied on an expert who failed to conduct an adequate investigation in shaping his opinions. Reasonable inferences raise a question here as to whether Defendant was reasonable in determining that there was justification for denying the claim.

This is not to say that Plaintiffs will prevail on those inferences, however, because a reasonable jury could conclude that the claim at issue here was fairly debatable and that the circumstances provided reasonable justification for Defendant's conduct, which would defeat the bad faith claim. Rather, today's decision only recognizes that the inferences of the facts before

the Court create a jury question. The Court therefore **DENIES** partial summary judgment on the bad faith claim.

### III.  Conclusion

For the reasons set forth above, the Court **DENIES** Defendant's motion for summary judgment on all claims or, in the alternative, for partial summary judgment on the bad faith claim. (Doc. # 74.)

**IT IS SO ORDERED**.

      /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE