# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**JAMES ULLMAN, et. al,**

           **Plaintiffs,**                       **Case No. 2:05-cv-1000**
                                               **JUDGE GREGORY L. FROST**
      **v.**                                   **Magistrate Judge Mark R. Abel**

**AUTO-OWNERS MUTUAL
INSURANCE CO.,**

           **Defendant.**

## OPINION AND ORDER

This diversity matter is before the Court for consideration of Defendant's May 7, 2007 motion *in limine* (Doc. # 97), Plaintiffs' memorandum in opposition (Doc. # 100), and Defendant's reply memorandum (Doc. # 104).  For the reasons that follow, this Court finds the motion well taken.

## I.  Background

As this Court has previously summarized, Plaintiffs James Ullman, Frank Byers, Richard Ronding, and Hassan Dakhtah conduct business together under the name Burd Partnership.[1] They own real estate in Logan County, Ohio, including an antique mall located in Bellefontaine, Ohio.  On January 3, 2005, part of the roof and a wall of this antique mall collapsed.

---

[1]  Defendant's summary judgment motion indicated that although he is a named plaintiff, Ronding ceased being a member of the partnership years before the collapse.  (Doc. # 74-1, at 2 n.1.)  By continuing to track the pleadings in summarizing the case, the Court again expresses no opinion here on whether Ronding is a proper party to this litigation.

Plaintiffs contacted their insurer, Defendant Auto-Owners Mutual Insurance Co. ("Auto-Owners"), and informed it of the collapse.  On January 4, 2005, claims representative Trudy Bushman inspected the antique mall on behalf of Defendant.  Later that day, Bushman spoke with Alan Kundtz, an engineer from SEA, Ltd., who then conducted an on-site inspection the following day.  Kundtz reported to Bushman that an inward acting force had caused the wall to fall, and Defendant issued a letter that same day that denied coverage under the commercial insurance policy.  Plaintiffs' June 2005 submission of a formal claim met with the same rejection in September 2005.

Plaintiffs subsequently filed suit in the Common Pleas Court in Logan, Ohio on October 6, 2005.  (Doc. # 1-3.)  They assert that there was no evidence to support the denial, that the collapse of the wall should be covered under the insurance policy, and that the denial of their claim was in bad faith.  Accordingly, the complaint presents one claim for breach of contract and one claim for bad faith.  The Michigan-based Defendant removed the action to this Court on November 1, 2005.  (Doc. # 1.)

On January 30, 2007, Defendant filed a motion for summary judgment or, in the alternative, for partial summary judgment on the bad faith claim.  (Doc. # 74.)  During briefing on that motion–and one week before a scheduled deposition of Plaintiffs' bad faith expert–Plaintiffs filed a supplemental report from their expert, Howard J. Hartman.  (Doc. # 76.)  Defendant responded by filing a February 16, 2007 motion to strike the supplemental report and to limit Hartman's testimony.  Because the motion to strike could affect the summary judgment analysis, the Court set up an expedited briefing schedule for the motion to strike.  (Doc. # 83.)  After the parties completed briefing on the motion to strike, the Court issued an April 5, 2007

2

Opinion and Order that granted the motion to strike Hartman's February 12, 2007 supplemental report and precluded him from testifying at deposition and trial in accordance with that report. (Doc. # 93.)

The Court subsequently issued a June 11, 2007 summary judgment decision denying Defendant's motion for summary judgment on all claims or, in the alternative, for partial summary judgment on the bad faith claim. (Doc. # 107.) Defendant then filed a June 18, 2007 motion for reconsideration/motion for leave to file deposition transcript (Doc. # 109), which this Court denied in a June 19, 2007 Opinion and Order (Doc. # 110).

Defendant has moved to exclude the testimony of Hartman at the time of trial. (Doc. # 97.) The parties have completed their briefing on the motion, which is now ripe for disposition.

## II. Discussion

### A. Standard Involved

The Court has previously noted that the inquiry involved in and nature of a motion *in limine* decision are well settled:

> Motions in limine are generally used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose. *See Jonasson v. Lutheran Child and Family Serv.,* 115 F.3d 436, 440 (7th Cir.1997). The court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds. *Cf. Luce v. United States,* 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 463 n.4, 83 L. Ed. 2d 443 (1984) (federal district courts have authority to make in limine rulings pursuant to their authority to manage trials). Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. (citations omitted). Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether

> the evidence in question should be excluded. The court will entertain objections
> on individual proffers as they arise at trial, even though the proffer falls within the
> scope of a denied motion in limine. *See United States v. Connelly,* 874 F.2d 412,
> 416 (7th Cir.1989) (citing *Luce,* 469 U.S. at 41, 105 S. Ct. at 463) ("Indeed, even
> if nothing unexpected happens at trial, the district judge is free, in the exercise of
> sound judicial discretion, to alter a previous in limine ruling."). *Hawthorne
> Partners v. AT & T Technologies, Inc.,* 831 F. Supp. 1398, 1400-01 (N.D.
> Ill.1993).

*Indiana Ins. Co. v. General Elec. Co.*, 326 F. Supp.2d 844, 846-47 (N.D. Ohio 2004). Cognizant

of this standard, the Court shall now turn to the issue of whether to exclude Hartman's

testimony.

### B.  Analysis

Defendant argues that the Court should exclude bad faith expert Hartman from testifying

at trial because his first report–the only report still relevant given that the Court struck his second

report–lacked reasoning in violation of Federal Rule of Evidence 702 and the test set forth in

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). This Court agrees.

As the Court explained in the summary judgment decision, the United States Supreme

Court held in *Daubert* that the Federal Rules of Evidence had superseded the "general

acceptance" test of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and that Rule 702

requires that trial judges perform a "gate-keeping role" when considering the admissibility of

expert testimony. *Daubert,* 509 U.S. at 597. The relevant Federal Rule of Evidence is Rule 702,

which  provides:

> If scientific, technical, or other specialized knowledge will assist the trier
> of fact to understand the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience, training, or education, may
> testify thereto in the form of an opinion or otherwise, if (1) the testimony is based

4

> upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Further, the Supreme Court has made clear that Rule 702 applies not only to scientific testimony but also to other types of expert testimony based on technical or other specialized knowledge.  *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 149 (1999).

The trial court's gate-keeping role is two-fold.  First, the Court must determine whether the proffered testimony is reliable.  *See Daubert*, 509 U.S. at 590.  The reliability assessment focuses on whether the reasoning or methodology underlying the testimony is scientifically valid.  *Id.* The expert's testimony must be grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief.  *Id.*  Thus, the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable.  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3rd Cir. 1994).

The Supreme Court in *Daubert* set out four non-exclusive factors to aid in the determination of whether an expert's methodology is reliable.  They are:

> (1) whether the theory or technique has been tested;
> (2) whether the theory or technique has been subjected to peer review and publication;
> (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and
> (4) whether the theory or method has been generally accepted by the scientific community.

*Daubert*, 509 U.S. at 593-94. *See also Deal v. Hamilton County Bd. of Ed.*, 392 F.3d 840, 851 (6th Cir. 2004). The Court in *Kumho Tire* stressed that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial judge may consider one or more of the *Daubert* factors when doing so will help determine that expert's reliability. *Kumho Tire*, 526 U.S. at 150. The test of reliability is a "flexible" one, however, and the four *Daubert* factors do not constitute a "definitive checklist or test" but must be tailored to the facts of the particular case. *Id.* (quoting *Daubert,* 509 U.S. at 593); *see also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 470 (6th Cir. 2004). The particular factors will depend upon the unique circumstances of the expert testimony involved. *See Kumho Tire Co.*, 526 U.S. at 151-52.

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant to the facts at issue. *See Daubert*, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. *See United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993). Thus, an expert's testimony is admissible under Rule 702 if it is predicated upon a reliable foundation and is relevant.

The United States Supreme Court and courts of appeals have made clear that a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that area of expertise or that are not founded on a reliable methodology. *See, e.g., Kumho Tire Co., Ltd.*, 526 U.S. at 154-55 (finding the proffered expert qualified as an expert in mechanical engineering, but that his methodology in analyzing a particular tire failure was not reliable); *Weisgram v. Marley Co.*, 169 F.3d 514, 518 (8th Cir. 1999) (holding that a city fire

captain, although qualified as an expert on fire investigation and therefore qualified to testify as to his opinion that a fire started in the entryway and radiated to a sofa, was not qualified to testify as to his unsubstantiated theories of a malfunction that might have caused the fire); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1317-19 (11th Cir. 1999) (proposed expert testimony of pathologist not permitted upon basis of unreliable methodologies in silicon breast implant case); *Cummins v. Lyle Indus.*, 93 F.3d 362, 371 (7th Cir. 1996) (industrial engineer not permitted to render an expert opinion regarding the adequacy of warnings, the adequacy of an instruction manual, and the feasibility of alternative designs for a trim press).

The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury; rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The judge's role is simply to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value. *Wellman v. Norfolk and W. Ry. Co.*, 98 F. Supp. 2d 919, 923-24 (S.D. Ohio 2000).

Given the foregoing, Defendant is entitled to the exclusion of Hartman's testimony. The spartan nature of Hartman's conclusory first report defies finding that his testimony is reliable. Simply stated, the Court cannot address the principles or methodology Hartman applied because the October 28, 2006 report does not contain evidence of those principles or methodology. Rather, bereft of reasoning, the report merely contains a conclusion and lists items that Hartman states he reviewed and on which he asserts he based his opinion. This does not satisfy *Daubert* or Rule 702, and the Court cannot say that any testimony related to the report would be reliable.

7

Moreover, in the absence of any reasoning, Hartman's bald opinion is of little help to a jury in determining the facts of this case.

Plaintiffs are correct in stating in their memorandum in opposition that the Court did not previously exclude Hartman from testifying altogether. They ask that the Court permit Hartman to testify and offer that he can be deposed. But Plaintiffs cannot read into the limited nature of the Court's prior decision that that is not there. Plaintiffs overlook that what was before this Court previously was a motion to strike Hartman's second report, not a motion to preclude him from testifying at trial entirely. Therefore, the Court's prior decision does not foreclose the relief Defendant now seeks.

Additionally, Plaintiffs' offer to tie Hartman's trial testimony to a deposition is simply an end run around the fact that discovery has long since closed. The parties apparently have agreed to conduct some discovery outside the discovery period, but if Defendant does not agree to legitimize Hartman's first report via a belated deposition, this Court will not force the company to do so when Defendant has not been at fault on this issue. The Court will not reward inefficiency or a sloppy expert report by mandating such a salvage operation on the eve of trial. Accepting Plaintiffs' representation that they were not attempting to engage in strategic gamesmanship, the Court cannot nevertheless overlook the result of Plaintiffs' conduct, even if unintended. That conduct and the fact that required discovery has closed favor foreclosing a court-ordered deposition of Hartman.

This result does not sanction Plaintiffs twice as they imply it would. Rather, today's decision addresses the ramifications of an inherently flawed first report that violates *Daubert* and

Rule 702.  The Court's prior decision addressed the effect of the discovery violation that constituted the second report.  As part of that decision, the Court found that Hartman could not testify at a deposition and at trial in accordance with his second report, not because it was similarly flawed under *Daubert* and Rule 702, but because it was untimely.  Although these infractions emerge from related filings, the issues with the two reports are at their essence distinct violations necessitating separate action.

Hartman may well be a sound expert who could ably and admirably address several of the coverage issues involved in this case.  But his report fails to satisfy the fundamental gatekeeping requirements that control expert testimony.  Accordingly, the Court in its discretion concludes that Hartman should not be permitted to testify at trial.

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's May 7, 2007 motion *in limine*.  (Doc. # 97.)

**IT IS SO ORDERED**.

> _____/s/ Gregory L. Frost_____
> GREGORY L. FROST
> UNITED STATES DISTRICT JUDGE